# Lewis *v.* The State.

*Indictment for Gaming.*

1. *Gaming; admissibility of evidence.*—On a trial under an indictment for gaming, in that the defendant played and bet at cards, where a witness for the defendant testified that on the occasion referred to he had a book in the room and some paper checks which were about the size of playing cards and which he was looking at, it is not competent for the defendant to ask said witness, what was done with the book he had testified about; the question calling for testimony which was wholly irrelevant to any issue in the case.

2. *Same; not competen, for witness to testify for what purpose they went to the place where the game was played.*—On a trial under an indictment for gaming, it is not competent for the defendant, upon being examined as a witness, to testify for what purpose he and other persons went to the place where the gaming is alleged to have occurred.

3. *Gaming; jail not a public place within the statute.*—A jail house containing two stories, the upper story being the jail or prison and the lower floor being reserved for dwelling purposes, is not a public house or place within the meaning of the statute against gaming (Code, § 4792); nor is one of the rooms on the lower floor of said jail building, which was occupied by the jailer as a bed and living room a public place within the meaning of said statute.

APPEAL from the Circuit Court of Covington.

Tried before the Hon. JOHN P. HUBBARD.

The appellant in this case was tried and convicted under an indictment which was in words and figures as follows: "The grand jury of said county charge that before the finding of this indictment Ed Lewis bet at a game played with cards or dice, or some device or substitute for cards or dice at a tavern, inn, storehouse for retailing spirituous liquors, or house or place where spirituous liquors were at the time sold, retailed, or given away, or in a public house, highway, or some other public place, or at an outhouse where people resort, against

the peace and dignity of the State of Alabama." The facts of the case are sufficiently stated in the opinion.

In his oral charge the court, among other things, instructed the jury as follows: "I charge you that the jail house is a public house in the meaning of the statute against betting at cards or dice, and if you believe from the evidence beyond a reasonable doubt that defendant bet at a game of cards played in the room testified about by the State's witness, he bet at a game of cards in a public house."

The defendant separately excepted to this portion of the court's oral charge, and also separately excepted to the court's refusal to give, among others, the following written charge requested by him: "If you believe the evidence you should find defendant, Ed Lewis, not guilty."

STALLINGS & REID, for appellant.—A public house within the meaning of the statute is any house to which all persons may go, such as a storehouse, shop, hotel, court house, etc.—8 Amer. & Eng. Ency. of Law, 1045, *et seq.;* 19 Amer. & Eng. Encyc. of Law, 95, 305; *Parker v. State,* 26 Tex. 207; *Skinner v. State,* 30 Ala. 524; *Smith v. State,* 52 Ala. 384; *Foster v. State,* 84 Ala. 451.

While a jail is a house belonging to the public, and used to subserve public ends, it is not a public house within the meaning of that term as employed in the statute.—19 Amer. & Eng. Encyc. of Law, 85 and notes; *People v. Cottrell,* 18 Johns. (N. Y.) 118; *People v. Van Blarcum,* 2 Johns. (N. Y.) 105; *Childress v. State,* 85 Ala. 77.

MASSEY WILSON, Attorney-General, for the State. The question asked the witness Wright to which the court sustained the solicitor's objection, was wholly irrelevant to the issues in the case, and the objection was properly sustained.—*McCormack v. State,* 102 Ala. 156, 161.

The question asked the defendant by his counsel, to which the court sustained the solicitor's objection, called for the secret, uncommunicated motive or intention of

[Lewis v. The State.]

the witness.—*Lewis v. State*, 96 Ala. 6; *Whizenant v. State*, 71 Ala. 383.

That portion of the general charge of the court to which the defendant objected was proper. The testimony of the State tended to show that on the occasion in question the defendant and two others, one of whom was the jailer, were together in a room on the lower floor of the jail building; that the three parties, including the defendant, engaged in a game of cards there; that the room where the playing occurred was used as a sleeping place for the jailer; that the prisoners were kept on the second floor.

The defendant's testimony was in denial of the testimony for the State which showed the playing, but the other facts were admitted.

That the *jail* was a public place within the meaning of the statute, would seem to be very clear. There are two classes of public places: Those that are public *per se*, and those made public by the assemblage of people. The *jail,* being a public building, to which all people may go *per se*.—*Dickey v. State*, 68 Ala. 508; *Coleman v. State*, 13 Ala. 602; *Flake v. State*, 19 Ala. 551; *Windham v. State*, 26 Ala. 135; *McCauley v. State*, 26 Ala. 135; *Wilcox v. State*, 26 Texas 145; *Langrish v. Archer*, 10 Q. B. D. 44; 15 Cox C. C. 194.

And the fact that the room in which the defendant played was a private bed-room is immaterial, since the undisputed testimony showed that the room was a part of the jail building, and was used in connection with the jail as an "appendage" thereto, and was occupied by the jailer, the person in charge of the jail, which undoubtedly impressed it with the character of the *jail,* as to being a public place.—*Wilson v. State*, 31 Ala. 371; *Burnett v. State*, 30 Ala. 19; *Johnson v. State*, 19 Ala. 527; *Smith v. State*, 52 Ala. 384; *Skinner v. State*, 30 Ala. 524; *Foster v. State*, 84 Ala. 451; *Kicker v. State*, 133 Ala. 193.

HARALSON, J.—The testimony for the State tended to show that the defendant and two others, one of whom was the jailer, bet at a game played with cards, in a room

on the lower floor of the county jail building; that the room in which said game took place was the second room from the back of the jail on the first floor; that the upper story of the building was the jail (or prison); there were dwelling rooms below, and that there was no fence or enclosure around the jail.

The evidence for defendant tended to show that he and the other persons mentioned as having played and bet at cards, did not so play or bet, at that or any other game at the time referred to; that at the time, the jailer, Dolph Wright, lived in the jail; that he kept his bed and clothes in the room where the game was said to have been played, and lived and slept in said room; that no one stayed with him in said room, except, now and then, his wife; that he occupied it regularly and kept it locked when away from it and no one else stayed in the lower story of the jail. All the prisoners were kept in the upper story.

The witness, Wright, for defendant, denying that defendant played with or bet at cards, on the occasion referred to, testified that he, witness, had a book in the room and some paper checks, and defendant and another were looking at this book and handling these checks, which were about as large as, and of the size of playing cards. The defendant's attorney asked the witness, "What was done with the book you have testified about?" The court properly sustained an objection to this question. It was wholly irrelevant to the issue in the case. *McCormack v. State*, 102 Ala. 161.

When defendant was being examined as a witness for himself, his counsel asked him: "What did you and Mat Holmes and Dolph Wright [parties with whom the State's evidence tended to show defendant played cards] go to the room for, at the time testified about?" The court refused, on objection of the solicitor, to allow the question answered, and in this there was no error. The question called for a secret, uncommunicated motive or intention of the witness. Besides, it did not matter what the parties went to the room for, if they played and bet at cards after reaching the place. For the same reason, the other question asked the witness was im-

proper, viz.: "Did you go to the room on the occasion testified about to play cards?"

In the statute against gaming (Code, § 4792) certain houses are to be considered public houses, viz.: "any tavern, inn, storehouse for selling or retailing spirituous, vinous, or malt liquors, or house or place where spirituous, vinous, or malt liquors are retailed, sold or given away."—*Windham v. State,* 26 Ala. 69; *Pickens v. State,* 100 Ala. 129. Any other houses except those specifically named, are not *per se* public houses, but may become such by force of circumstances, and whether they are public or not in any given instance, is a question for the jury, under the evidence.

A jail house, in the sense that it is built and owned by the public, is a public house, but this is not the sense which determines its character in the statute against gaming. Although a house may be built and owned by the public, it may be private notwithstanding. A public house, as has been said, is one "which is commonly open to the public, either for business, pleasure, religious worship, the gratification of curiosity or the like." When tried by such a test, a jail, as a matter of fact, is not generally a public house.

The evidence in this case as to the character of the jail and the bed-room where it is said the playing took place is without conflict. There was no fact brought to light, which tended to show that the jail itself or the said room in it were public, but for aught appearing they were private.—*State v. Alvey,* 26 Tex. 155.

On the evidence introduced the court, as requested by defendant, should have instructed the jury to find the defendant not guilty.

Reversed and remanded.