## SCHAUB *v.* WRIGHT.

[No. 10,736. Filed March 11, 1921. Rehearing denied June 3, 1921. Transfer denied November 23, 1922.]

1. LANDLORD AND TENANT.—*Lease.—Construction.—"Saloon."*— The word "saloon" within the terms of a lease of premises to be used "for saloon purposes" executed prior to the enactment of the prohibition law (§8356a *et seq.* Burns' Supp. 1918, Acts 1917 p. 15) *held* to mean a place where intoxicating liquors were to be sold. p. 57.

2. CONTRACTS.—*Enforcement.—Performance Involving Violation of Law.*—The performance of a contract cannot be enforced where performance would involve a violation of law, and where, after the execution of the contract, the performance thereof is made unlawful, it cannot thereafter be enforced. p. 57.

3. LANDLORD AND TENANT.—*Lease for Saloon Purposes.—Termination.—Enactment of Prohibition Law.*—Where a lease required the premises to be used for saloon purposes for the term thereof, it was terminated by the enactment of the state-wide prohibition law (§8356a *et seq.* Burns' Supp. 1918, Acts 1917 p. 15), since such law made performance by the lessee impossible. pp. 57, 59.

4. LANDLORD AND TENANT.— *Lease.— Restrictive Provisions.*— *Use of Premises for Saloon Purposes.*—A provision in a lease reciting that the premises was to be used "for saloon purposes and no other purpose" *held* restrictive, and not merely permissive as to the use to be made of the premises. p. 59.

From Marion Superior Court (A-4,134) ; *W. W. Thornton,* Judge.

Action by Anna H. Wright against Joseph G. Schaub. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Aquilla Q. Jones, William W. Hammond* and *Walter D. Jones,* for appellant.

*Charles A. Dryer,* for appellee.

NICHOLS, J.—This action was for damages for breach of a written contract or lease of real estate in the city of Indianapolis, Indiana.

It appears by the complaint that on March 6, 1915, appellee and appellant entered into a written contract of leasing, by which appellee leased to appellant her said estate, being her entire building known as 138 East Washington street, in said city of Indianapolis, for five years from June 1, 1915; that appellant occupied said premises until July 2, 1918, paying rent therefor at the contract price until March 31, 1918, and holding over thereafter until July 2, 1918, when he vacated and abandoned the same without paying rent after March 31, 1918. Appellee was unable to rent such real estate until November 1, 1918, when she rented the same at a reduced rental. She demands damages based on the amount agreed upon in the lease, in the sum of $4,287.

It appears by the lease, a copy of which is by exhibit made a part of the complaint, that the premises were "to be used and occupied by lessee for saloon 1-3. purposes, and for no other purpose." A demurrer to the complaint was filed by appellant which presents the question as to whether the state-wide prohibition law passed by the General Assembly of Indiana, and which went into effect on April 2, 1918, annulled the lease. There is some contention as to the meaning of the word "saloon" and of the expression

"for saloon purposes," and definitions are given showing that it does not necessarily imply a place where intoxicating liquors are sold. But we have no difficulty in determining that the word "saloon" as used in this state, and under the circumstances in which it was used by the litigants in this case, meant a place where intoxicating liquors were to be sold. It is a well-established principle of law that the performance of a contract cannot be enforced where it would involve a violation of law, and where after it is entered into its performance is made unlawful, it cannot thereafter be enforced. This principle applies with force to the conditions involved in this case. The use of the premises for saloon purposes became impossible without violating the prohibitory law enacted after the contract was entered into. Of necessity, therefore, the lease terminated when the prohibitory law became effective, and was thereafter void. The principle is stated in *Burgett* v. *Loeb* (1909), 43 Ind. App. 657, 88 N. E. 346, where it is stated that—"It is the general rule that, where the performance of a contract becomes impossible subsequently to the making of the contract, the promisor is not thereby discharged. To this rule there is a well-established exception, viz.: Where the performance becomes impossible by a change in the law, the promisor is discharged." In that case, however, the performance did not become impossible because of a change in the law, as in this case, but by an application of the law in force at the time the contract was entered into. This distinction is noted in some of the cases cited by appellee, including *Burgett* v. *Loeb, supra.* To like effect, see, also, *Gaston* v. *Gordon* (1910), 208 Mass. 265, 94 N. E. 307; *Hyatt* v. *Grand Rapids Brewing Co.* (1911), 168 Mich. 360, 134 N. W. 22; *Greil Bros. Co.* v. *Mabson* (1912), 60 So. (Ala.) 876, 43 L. R. A. (N. S.) 664.

Appellee cites authorities sustaining the principle that, where the lease is not restrictive, but permissive as to the use to be made of the leased premises, 4. the enactment of a prohibitory law during the term does not terminate the lease. But these authorities are not in point, for certainly the expression "to be used and occupied by lessee for saloon purposes, and no other purpose," is restrictive in its meaning.

Appellee contends that the principle announced in *Burgett* v. *Loeb, supra,* is *obiter dicta,* and therefore not controlling. Be that as it may, the principle 3. states the law as applied to this case. We are not unmindful that there are authorities to the contrary in other states, but we cite as in harmony with the conclusion which we reach, *Stratford* v. *Seattle Brewing & Malting Co.* (1916), 94 Wash. 125, 162 Pac. 31, L. R. A. 1917C 931; *Brunswick-Balke-Collender Co.* v. *Seattle Brewing & Malting Co.* (1917), 98 Wash. 12, 167 Pac. 58; *Pabst Brewing Co.* v. *Howard* (1919), (Mo. App.) 211 S. W. 720. This action is for recovery for breach of a contract, which was without force after April 2, 1918. It follows that there could be no recovery for the use of the premises thereafter until July 2, 1918, *under the contract,* and there is no averment seeking other relief.

After the demurrer to the complaint was overruled, affirmative answers were filed presenting the question above discussed and other questions, but, having reached the foregoing conclusion, we do not consider them. The judgment is reversed, with instructions to the trial court to sustain the demurrer to the complaint, and for further proceedings.